WARD VS BASS.

Opinion delivered September 25, 1902.

1. *Trespass—Damage by Live Stock—Instructions.*

In an action for trespass of live-stock and consequent damage, wherein plaintiff claimed the contract providing for feeding the defendant's cattle upon a part of plaintiff's premises, required that plaintiff should build a three-wire fence separating this part from his remaining premises, and that defendant should keep a man with the cattle to prevent them from breaking down this three-wire fence; and defendant claimed that plaintiff was required by the contract to maintain a sufficient fence to keep defendant's cattle in that portion of the premises, an instruction to the jury that if they found the contract to be as claimed by plaintiff, and that the plaintiff performed the contract as to him but defendant failed to keep a man with the cattle or that, if kept, he failed to prevent the cattle from breaking down the fence, and that the damage was thus done, then they should find for the plaintiff, was correct, in connection with other charges, asit fairly submitted to the jury the contention of the plaintiff.

2. *Instructions—Properly Refused when Covered by Others Given.*

Where a specific instruction is requested, it is not error to refuse the same where other instructions also requested by same party, are given which fairly present to the jury the issues presented by the answer and evidence of such party.

3. *Instructions—Not Based on Evidence—Not Error as to Party Requesting Same.*

An instruction given at the request of the defendant submitting to the jury a question not raised by the pleadings or proof, is not an error of which the party requesting such instruction, can complain on the ground that it misled the jury.

4. *Argument of Counsel—Reading Portion of Instructions.*

It is not error for the court to refuse to require counsel to read the whole of an instruction, of which he reads a part to the jury, and to comment on the whole instruction, where it does not appear that the counsel went outside the record.

Appeal from the United States Court for the Northern District .

CHARLES W. RAYMOND, Judge.

Action by W. G. Bass against J. N. Ward. Judgment for plaintiff. Defendant appeals. Affirmed.

On July 17, 1899, the plaintiff below (appellee here) filed his complaint against the defendant below (appellant here), and alleged that on or about the 28th day of February, 1898, he entered into a verbal contract with the defendant to sell a quantity of feed to the defendant, and to allow defendant to turn his cattle on the said feed on the ground of plaintiff. It was agreed that the plaintiff should build a three-wire fence between the ground where defendant's cattle were to run and the rest of plaintiff's farm, where plaintiff had a quantity of fodder and other feed, and that the defendant would keep a man with his cattle while in plaintiff's field, to keep them from breaking over the said fence and eating and destroying plaintiff's feed. Plaintiff states that he did put a three-wire fence, as agreed, and made such a fence as was agreed upon; that defendant turned a large number of cattle upon the ground where he was to turn them, where they remained eight days without injury to plaintiff; that after eight days "the defendant failed and neglected to keep a man with the said cattle to keep them from breaking over the said fence into plaintiff's feed; that the defendant, in violation of his agreement, wrongfully and negligently and willfully permitted his cattle—a large number of them—to break over into plaintiff's field, where his fodder and other feed was, and to destroy it"; when the man in charge of the defendant's cattle knew of the foregoing fact, he failed and refused to drive them out; that, by reason of the failure and neglect of defendant to keep his cattle out of plaintiff's feed, defendant's cattle ate and des-

troyed 918 shocks of corn fodder belonging to plaintiff, to his damage in the sum of $642.60; that the same was destroyed in March, 1899; and plaintiff asks judgment for said amount, interest, and costs. On the 11th day of November, 1899, defendant filed his answer, and denied all the allegations of plaintiff's complaint, and alleged that on February 20, 1899, he bought from plaintiff 124 tons of hay for $279, and 517 shocks of corn and fodder for $299.35, situated on the place of plaintiff; that it was agreed between them that defendant should turn his cattle in on said hay and fodder, and winter them there, "and that plaintiff should build such a fence to keep defendant's cattle off of his other property as might be necessary, and that there was no contract or agreement that defendant should keep a man with the cattle to keep them off of plaintiff's property, but it was expressly understood and agreed between them that, unless plaintiff should build such a fence as would keep said cattle off of plaintiff's premises, that any loss or damage that they might do should be sustained by plaintiff, and that this defendant should not be responsible for it,"—and prays judgment for costs. On May, 10 1900, defendant, by leave of the court, filed an amendment to his answer, and says that plaintiff agreed "to build a sufficient fence to keep defendant's cattle in the field in which that part of the hay and corn fodder which was not in another part of plaintiff's field was situated"; that "when said fence was completed it was wholly inadequate to hold said cattle and keep them out of plaintiff's adjoining field, and defendant had to go to the expense of $5.65 to repair the fence and employ additional men to ride the lines and hold his cattle on the ground set apart for them." Defendant alleges that plaintiff negligently and willfully permitted his own cattle and the cattle of others to get into the field of defendant and eat and destroy a large part of the feed purchased of plaintiff. Defendant further alleges that, by reason of plaintiff's failure, "he was damaged to the extent of $1 per head by the frequent moving

of them, and the loss of feed, for several days," and asks damages against plaintiff for $1,000. On May 11, 1900, plaintiff filed a reply, and denies allegations of defendant in his amended answer. On December 13, 1901, the case was tried before a jury, who returned the following verdict: "We, the jury, find the issues for the plaintiff, and assess his damages at $642. (Signed) S. L. Landers, Foreman." And on the same day defendant filed a motion for new trial, which on January 18, 1902, was overruled by the court, to which defendant excepted, and judgment was rendered on said verdict, and defendant prays an appeal to this court.

*Hutchings, West & Parker,* for appellant.

*Thomas H. Owen,* for appellee.

TOWNSEND, J. The appellant has filed five specifications of error as follows: "Specification of errors: The court below erred: First. In overruling defendant's motion for a new trial. Second. In instructing the jury as follows: 'You are instructed that if you find from the evidence that the plaintiff, W. G. Bass, sold to the defendant, J. N. Ward, some standing corn and a stalk field and hay land, and agreed to construct a three-wire fence so as to inclose said corn and stalk field and hay land for the use of J. N. Ward's cattle, with the understanding and agreement that the said J. N. Ward would put a man in charge of said cattle who would keep them from breaking through said fence and destroying the shock fodder and corn belonging to plaintiff, W. G. Bass, and that the said W. G. Bass did construct said fence in accordance with his agreement, and that the said J. N. Ward did not have a man in charge of said cattle to keep them from breaking through said fence and destroying said feed, or that the man in charge of said cattle negligently permitted the cattle to go over to the shock fodder of Bass or to break said fence, and that said cattle did destroy the feed of plaintiff, W.

G. Bass, then you should find for the plaintiff.' Third. In refusing to instruct the jury as follows: 'You are further instructed that even if you believe from the evidence that plaintiff only agreed to construct a three-wire fence between said feed lot and the remainder of his premises, and that defendant agreed to furnish a man to ride said fence and help hold the cattle in said feed lot, but failed to furnish such man, or such man failed to perform the services agreed, unless you further find that the three-wire fence so constructed by plaintiff was constructed in such a substantial and sufficient manner and was such a sufficient fence as to prevent all ordinary cattle from breaking through the same, then you should find for the defendant.' Fourth. In permitting counsel for plaintiff, in his closing speech, after having read the following portion of the fourth instruction given by the court, to wit: 'You are further instructed that, under the laws in force in the Indian Territory in 1899, in order for a plaintiff who claims that he has been damaged by the cattle of another trespassing upon his grounds to recover from such person, he must not only prove that he has suffered damage, but also show that the ground upon which such trespass was committed was inclosed with a fence constructed in such a substantial and sufficient manner as to prevent all ordinary cattle from entering upon such grounds; this being a grazing country, where cattle may lawfully go upon any lands not so inclosed.' The remainder of said instruction which was not read, being as follows: 'And if you believe from the evidence in this case that plaintiff agreed to construct a division fence between the feed lot which he let the defendant and the balance of his premises, and there was no specific agreement as to the kind and character of fence plaintiff was to construct, then, unless you find that plaintiff did construct such substantial and sufficient cross-fence between the feed lot and the balance of the place as would turn all ordinary cattle, you must find for the defendant,'—and to proceed to argue therefrom that, because plaintiff's farm was inclosed by an exterior fence

of six wires, that this satisfied the requirements of said inrtsuc-
tion; and when defendant's counsel objected to this as improper
argument, and requested the court to require plaintiff's counsel
to desist therefrom, refused this request, and stated in the pres-
ence of the jury that plaintiff's counsel had a right to read and
argue from all or any portion of the instructions given, as he
might deem proper. Fifth. In refusing to set aside the verdict
because it was contrary to law."

Appellant's first and fifth assignments of error will be deter-
mined by the consideration of the second, third, and fourth.
Appellant's second assignment of error is an exception to the
giving of the instruction to the jury requested by appellee, as
follows: "You are instructed that if you find from the evidence
that the plaintiff, W. G. Bass, sold to the defendant, J. N. Ward,
some standing corn and a stalk field and hay land, and agreed
to construct a three-wire fence so as to inclose said corn and
stalk field and hay land for the use of J. N. Ward's cattle, with
the understanding and agreement that the said J. N. Ward would
put a man in charge of said cattle who would keep them from
breaking through said fence and destroying the shock fodder
and   corn   belonging   to   plaintiff,   W.   G.   Bass,   and
that   said   W.   G.   Bass   did   construct   said   fence
in accordance with his agreement, and that said J. N. Ward did
not have a man in charge of said cattle to keep them from
breaking through said fence and destroying said feed, or that
the man in charge of said cattle negligently permitted the cattle
to go over to the shock fodder of Bass or to break said fence, and
that the said cattle did destroy the feed of plaintiff, W. G. Bass,
then you should find for the plaintiff." It is evident from an
examination of the complaint filed by appellee, and the evidence
introduced by him on the trial, that the above instruction fairly
submitted to the jury the contention made by the appellee in this
action. 11 Enc. Pl. & Prac. p. 158, says: "Instructions to a jury
must be based upon and be applicable to the pleadings and

evidence. Instructions should be neither broader nor narrower than the pleadings, but should be predicated of all the issues raised by the pleadings and supported by the evidence, and they are equally faulty whether they enlarge or restrict the issues;" and, citing authorities from many states supporting the doctrine of the text the some work further says; "A large number of decisions lay down the broad doctrine that the instructions must be applicable and limited to the issues raised by the pleadings, and that it is error to give an instruction which does not conform to this rule." Id. pp. 161, 162. There can be no question but that the instructions above set out, and excepted to, very correctly submitted to the jury the issue made by appellee in his pleadings and evidence in this action.

Appellant's third assignment of error is the refusal of the court to give the following instruction: "You are further instructed that even if you believe from the evidence that plaintiff only agreed to construct a three-wire fence between said feed lot and the remainder of his premises, and defendant agreed to furnish a man to ride said fence and help hold the cattle in said feed lot, but failed to furnish such man, or such man failed to perform the services agreed, unless you further find that the three-wire fence so constructed by plaintiff was constructed in such a substantial and sufficient m a n n e r , a n d was such a sufficient fence, as to prevent all o r d i n a r y cattle from breaking through the same, then you should find for the defendant." But the court gave two instructions at the request of appellant which fairly presents the issue made by appellant in his answer and evidence. They are as follows: "You are further instructed that if you believe from the evidence that plaintiff sold defendant certain feed stuff for his cattle, and agreed that they should be fed on plaintiff's premises in a feed lot to be fenced off from the remainder of the place by plaintiff with a three-wire fence, and that defendant

agreed that he would furnish a man to help hold the cattle in said feed lot; and if you further find that the plaintiff constructed in a good and workmanlike manner a substantial, three-wire fence, sufficient to turn ordinary three year old steers, and defendant failed to furnish a man as agreed, or that the man so furnished failed to perform his duties as agreed, and that defendant's cattle were not ordinary three year old steers, but bad and breachy cattle, and by reason of the defendant's failure to carry out his part of the contract, and the bad and breachy character of his cattle, they broke over from said feed lot into the other parts of plaintiff's premises, and destroyed the corn and fodder of plaintiff,—then you should find for the plaintiff. You are further instructed that if you believe from the evidence that plaintiff sold defendant certain feed stuff to be fed defendant's cattle in a feed lot on plaintiff's premises, to be fenced off by plaintiff from the remainder of the premises with a fence sufficient to prevent defendant's cattle from breaking over into the other parts of said premises, and plaintiff failed to construct such fence as agreed, then, notwithstanding the fact that defendant's cattle did break over into the other parts of plaintiff's premises and eat or destroy the corn in question, you must nevertheless return a verdict for the defendant, unless you believe from the evidence that the plaintiff or his agent turned his cattle into the lot where plaintiff was keeping his fodder in shock." The contention in this action was simply to ascertain what the contract between the parties was. The appellee alleged that the agreement was that he was to build a three-wire fence, and that the appellant was to furnish a man to keep the cattle in the field leased to the appellant. The appellant alleged that the agreement was that appellee was "to build a sufficient fence to keep defendant's cattle in the field in which that part of the hay and corn fodder which was not in another part of plaintiff's field was situated." Appellee claims the damage was caused by appellant's failing to keep a man with the cattle, and appellant

claims that the damage was caused by the failure of appellee to construct a sufficient fence . What the law may be in the Indian Territory which requires owners of inclosures to have a sufficient fence to turn ordinary cattle has nothing to do with this case, and the instructions asked by appellant and given by the court upon that proposition were immaterial; but appellant, having requested such instruction, cannot be heard to complain. There was nothing in the pleadings or evidence in this case about "bad and breachy" cattle, but appellant, having requested such an instruction, cannot complain. Neither will the appellant be allowed to complain that instructions given at his request, which were immaterial, misled the jury. The only question, as above stated, was, what was the contract between the parties? Any instructions given that went beyond the scope of the issues presented by the pleadings and the evidence in the case were immaterial. We are of the opinion that the court below fairly presented the issues tendered by both parties in their pleadings and evidence to the jury.

The fourth assignment of error is the refusal of the court to require counsel for appellee to read the whole of an instruction which had been given by the court at the request of appellant's counsel, while making the closing argument for appellee, and comment on the whole instruction, instead of a part of the same. It does not appear that the counsel for appellee went out of the record in the slightest degree. The serious objection of appellant's counsel seems to have been that the counsel for appellee did not make such an argument to the jury as appellant's counsel desire, but we have every confidence that appellant secured a full and fair trial in this action.

We are of the opinion that the trial court committed no error in this case, and it is therefore affirmed.